Case No. 161358, Lynch v. Jackson May it please the Court, Brian Baird on behalf of the United States Bankruptcy Administrator for the Eastern District of North Carolina. This case is on a direct appeal from the bankruptcy court's order denying the bankruptcy administrator's motion to dismiss the Jacksons case as an abuse of Chapter 7 under Section 707B1. The basis of the bankruptcy administrator's motion and the issue before the Court is whether the Jacksons should have been limited to the lesser of their average monthly payment or the highest amount specified within the local standards published by the IRS for their car ownership expense and their mortgage and rent expense. Is it fair to say you really just want an answer here? Your Honor, we... Rather than forcibly advocating for a position, because it does seem to me you've got a plain language issue in the statute. Your Honor, I would... We are advocating for the interpretation that is advanced within our brief and for multiple reasons. The means test created a standardized approach to determinations of abuse. By having two different standards in the district, there's no standardization whatsoever. Right. And it's very hard for us to implement the statute and enforce the statute. Take, for instance, the case of the Jacksons. They equally could have drawn Judge Warren, because both Judge Warren and Judge Hummer cast... Right, I understand your desire for consistency, but what I'm saying is, I guess I'm trying to understand... Judge, can I understand your question? And I'm sorry, I went afield there. We believe that the statute does not dictate solely looking to what that chart says, and there's multiple reasons for that. The first is, is that the distinction between applicable and actual. I don't think that, based on the legislative history, it does not appear that Congress intended that result. The purpose in creating the means test was to create a needs-based bankruptcy in order to cure perceived abuses and restore personal responsibility and integrity in a bankruptcy system. And uniformity as well. And uniformity. And this test is no less uniform, Your Honor. If you utilize the average payment, the lesser of the average payment versus the standard amount, it's applied evenly. There's no judicial discretion in that. There is no looking behind the number. The number is the number. It's easily calculated. And Congress, in doing so, they didn't create the means test out of whole cloth. And the purpose of the means test was to first have a threshold determination of whether identifying debtors who were able to pay their creditors. And then, once you make that identification, maximizing the amount they pay those creditors. The... But the form that you give draws on the statutory language, does it not? Your Honor, the form seeks to implement the language. The form does not have the force of law. It is not... Oh, no, I realize that. But it does draw on the statute, doesn't it? It certainly is based on the statute. And I would note there are several aspects of the form that, as I'll get to in my argument, that refer only to the Internal Revenue Manual. Line 10 on the form relating to adjustment to mortgage rent deduction doesn't exist in the table for mortgage and rent. It does not exist in the Bankruptcy Code. It is only a creature of the Internal Revenue Manual's Financial Analysis Handbook, Section 5.15.1.9. But the law, the forms draw a very clear distinction between, and the law does too, doesn't it, between actual expenses and expenses that are not actual expenses? As in... In different categories. Thank you, Your Honor. The distinction in the law, I believe, is that all three of the... In not creating the ability to pay technical cost, it borrowed from the IRS's necessary expense calculations. The national standards, the local standards, and the other necessary expenses. Other necessary expenses are always going to be actual costs, or the actual numbers of... The non-local. That's right. And we view the, at least the local standards, the issues before this Court, as being caps. And that is the most equitable interpretation of the statute. There is no absurd results under that application. For instance, in the Jacksons case, they get essentially $90,000 in phantom deductions over the 60-month disposable income period. As calculated as they filed it, the case has a negative disposable income over 60 months of negative $31,000, approximately. Under the Bankruptcy Administrators' approach, and the approach we urge this Court to adopt, that number is positive $59,000 and presumption of abuse arises. That number is also in excess of their non-party unsecured debts. The issue is, one, under the Jacksons' approach, they get their discharge immediately and there's no payment to creditors whatsoever. Under the Bankruptcy Administrators' approach, they are forced to convert to Chapter 13 or have their case dismissed, where they will be in a 60-month plan. The Court will determine their projected disposable income, also using 707. But that's a policy and fairness argument, isn't it? Rather than a statutory argument or a legal argument. Your Honor, I think that the statute is ambiguous. As we saw with the Supreme Court's decision in Ransom, where the differing circuits, some said applicable meant, regardless of whether the debtor actually incurred the expense, some said that they actually had to incur one penny of that expense in order to get it. And ultimately, the Supreme Court came down on the side of, well, you actually have to have the expense, and did not ultimately decide whether or not the debtor would be limited to the lesser of the average expense. Right, well, it's a fairly unremarkable proposition, though, that you have to have an expense in order for it to be applicable, isn't it? Certainly, Your Honor. But I think that when you look at the... Well, that doesn't really help us. I know, but in the context of how it's applied, the fact that this is only available to similarly situated debtors. This provides debtors like the Jacksons, whose payments are less than the standard amount, excess phantom deductions. Below-median income debtors who do not prepare the means test and whose cases can be dismissed for abuse only by motion of the court, by the bankruptcy administrator or the US trustee, depending on the district, we look at the actual expenses and the actual income. They get no such deduction. Additionally, those debtors who do not have any payment, whether they don't have a car but want a car, or they have a car but it's paid off, but it's really old and it's going to break down, they get zero. Whereas the Jacksons get a windfall. They get to shield $90,000 from the... Again, that's the policy. That's not fair. The Jacksons are getting away with something. And I understand that. You want to have things administered fairly, but how would you be writing the opinion of this court in your favor in terms of dealing with the statute and dealing with the case law? Your Honor, I would suggest that post-ransom, the case law is pretty 50-50 on the issue. And in our district and in the circuit, I believe there's only three opinions on it. Judge Dowd, Judge Warren, and Judge Hummerkus. Two to one. I think this court could, one, find that applicable amounts specified within the national standards and the local standards brings in some of the instruction of the Internal Revenue Manner, or at least as the Supreme Court noted. Well, how do you deal with, regardless of your actual expenses language in the form? You say the form's just incorrect? The, yes, that is our contention. And the reason why it says it's just incorrect. And how does the form get, who creates the form? The form is created by the Judicial Conference, Your Honor. And again, the Judicial Conference in the United States, the Reforms Committee. It is approved, but it does not have the form. Approved by? I believe the Supreme Court, if I'm not mistaken. But not the same, sorry, I think I misspoke. I believe it's only approved by the Judicial Conference and not approved by the Supreme Court. That's the difference between the rule. Well, the Chief Justice is, I'm sorry. It's the difference between rules and forms. Yes, Your Honor. So it is not promulgated by the Supreme Court and transmitted to Congress like a rule is. It is created by the Judicial Conference. And as I noted, the forms themselves provide support for looking to the Internal Revenue Manual, as does the legislative history. Okay, but if you back things up and look at the statute, you see the statute in the same sentence distinguishes between applicable monthly expense amounts specified under the national standards and the debtor's actual monthly expenses for other necessary expenses.  Thank you, Your Honor. Or you'd say it's not clear. I'd say it wasn't intentional. And it was an intentional contrast. If you were on the Judicial Conference and you were going to draft this form, what would you look to first? Your Honor, I would look to the statute and determine whether it was plain. And then if it was not plain, as we're suggesting this court do, look to the legislative history. Look to the Internal Revenue Manual from which these are adopted and which provides that it is either the amount spent or the standard, whichever is less. And which one of those things do you glean that this was not intentional? You just said it wasn't. Your Honor, certainly, I think if we were to just... One, prior versions of the statute included a more specific reference to the collection of financial statements. But that is not the statute that was passed. The... That would indicate it was intentional. I would... Again, I think it was just not drafted with the precision that it should have been. It would be our position. Are there ever situations in which this reading that your opponent on the other side is suggesting, where it's less generous to a debtor than your situation would be, than your reading would be? I do not believe so, Your Honor. In the instance of... As it relates to... Let me rephrase that. Secured debt... There was a decision made in passing BATSEPA that a debtor would be permitted to take their entire secured debt payments, so long as they were actually going to incur those during the life of... Within... At the time of filing. I guess this court found it more quickly. But if a debtor has a lease or has a... Leases their home, they are... They cannot take an amount over the standardized amount. That essentially acts as a cap, whereas an individual... That's what I was asking. So it does act as a cap. It does act as a cap. Yes. It does. But again, we would urge the court to look to the Internal Revenue Manual, which the IRS uses in order to interpret these tables. The tables themselves, as the Supreme Court noted in its ransom decision, are not self-defining. Some... Looking to the Internal Revenue Manual is almost necessary. In relation to the ownership cost expense, what is the definition of ownership cost? That's all that is provided within the table. Is it solely limited to those who are making secured debt payments, as the title suggests? Or does it also include lease payments? We could have as many different bankruptcy judges as there are different opinions on that. And you think that this case is going to resolve that question? It certainly would, Your Honor. And I should note that that is just an example of a potential absurdity of just relying on the tables, but that the Internal Revenue Manual provides a definition. It provides a definition that it is secured debt payments and lease payments. And it is... I would again just stress the inequity in permitting the Jacksons this entire deduction, how it runs contrary to the purpose of the means test, which is first to make a determination of which debtors are eligible for relief under Chapter 7, and then determination of how much they can afford to pay their creditors. And I would also point out that this fully aligns with the Jacksons will make their... Well, this provides us a cushion for in case our car were to break down, they're not in good shape or something along those lines. Well, there's no evidence in the statute that Congress intended to provide them a cushion. And there's also other available remedies to them if they anticipate a cushion, whether it be a claiming special circumstance for a adjustment to the calculation of their means test, if their case is... They're required to file under Chapter 13. Again, they can claim a special circumstance. They can seek an adjustment to the calculation of projected disposable income under the Supreme Court's ruling in Hamilton v. Lanning. And also as this court noted in the Plyler v. Stearns case, a modification of the Chapter 13 plan is available. And putting them into Chapter 13 requires them to be in a plan for 60 months. And during that time, a lot of things can happen. As the court saw in Logan v. Carroll, the debtor got inheritance and the creditors were able to share in that windfall. If there's no further questions, I would reserve my comments and move on. Thank you. May it please the court. My name is Lee Rowland and I represent Gabriel and Monte Jackson. In this case, it's undisputed that the Jacksons completed their official form 22A-2 according to the explicit instructions contained on the form. The bankruptcy court in this case should be affirmed for the following three reasons. First, the housing allowance and vehicle ownership allowances are applicable to the Jacksons financial circumstances because they incur these corresponding expenses covered by the local standards. Tables issued by the IRS. They meet this applicable test. Second, after meeting this eligibility test, the Jacksons monthly expenses for housing and transportation shall be the monthly expense amount specified under the local standards issued by the IRS regardless of the fact that their actual corresponding expenses in certain categories is in fact less. Lastly, the longstanding interpretation of the means test provisions embodied in official form 22A-2 is the correct interpretation because it gives effect to every provision in the statute and it shall be construed to be consistent with the code. The language that directs a debtor to deduct the national and local standards for their monthly expenses in clause two is plain. It's based on the language itself, the specific context in which the standards are used, as well as the broader context of the statute as a whole, specifically the means test portion. Because prior to that season, a debtor's ability to pay was evaluated on a case-by-case basis based on their actual expenses and whether or not those expenses were reasonable and necessary, which led to varying and inconsistent determinations. With BAPC, we see Congress create a defined, uniform statutory formula with the means test to be applied nationwide. Well, maybe I've misunderstood your colleague on the other side, but I thought that he was suggesting that the position that he's espousing would also be, you wouldn't have to do it each time, that there would be a uniform test. Your Honor, I think he's taking an interpretation of the test. You would still have to complete, or with regards to the uniformity, it's also imposing reasonable and necessary expense amounts for certain categories. And in that, it's uniform without determining whether any particular expense is reasonable and necessary. With BAPC. So you're saying that under his interpretation, it'd have to be this call about whether something is reasonable each time. Is that what you're saying? I'm just not, I'm just not, I'm just not quite understanding your argument. I thought he made an argument that his, the position that he was espousing also led to uniformity, so that that problem was no longer with us. Maybe I've misunderstood. He can correct me when he gets up. Correct, he was making that argument. Okay, so why is he wrong in making that argument? Or is he wrong? The distinction that I would like to make is that prior to BAPC, the courts were looking at monthly expenses on a case-by-case basis. And while there is uniformity, there was also uniformity addressed by using and implementing these IRS local and national standards because we have decisions of what's reasonable and necessary. And... So you're saying that the court was, the courts were required to look into both actual and necessary beforehand. They were evaluating. And so there was an individual qualitative evaluation that was totally removed by the statute. Yes, and the issue with the means test is that... So you're saying it wasn't uniform in the past. You're disagreeing very fundamentally then with Mr. Baird. In the past, there wasn't uniform decisions as to what was reasonable and necessary because they were looking at the actual expenses on a debtor's ability to pay. Where the difference with this is, is that the imposition of these standardized tables and the problem with the means test is that it doesn't include all of the debtor's actual expenses. It only includes certain amounts and they're subject to these necessary expenses. For purposes, the issue that they're raising is based on the interaction with the debtors, secure debt, and specifically housing allowance as well as vehicle ownership allowances. But the debtors are still required to take under the interpretation that Mr. Baird is offering. They're still capped at their operating expense allowance at $488. They're still capped at the operating expense for the house for purposes of non-mortgage or non-rental operating. So those are actual expenses. Well, under his interpretation, the debtors still would be capped based on the IRS allowance. Now, in this case. So, to get, you've got to know that you're a whole lot more experienced at this than I am, but it does seem to me that it does get a uniformity. That's the question I was asking you under his interpretation. Yes. It's not the uniformity you want. Yes, Your Honor. Because all you have to do is apply this IRS test, You are correct, Your Honor. But some of the limitations, to make an additional point, some of the limitations with this test that it doesn't include all the debtors' expenses. It only includes what the code provides that are enumerated expenses. Here, with regards to his issue about phantom deductions, here, Mr. Jackson gives $200 a month to support his son in college who's not in the household. That's not a deduction that's provided for in the means test. They contribute to 401ks. They have 401k loans. Those are not deductions that are provided for in the means test. So I don't understand. Let me put it to you. Is there any way in which this provision of the law would have a negative effect, would give a debtor less than he actually is entitled to? Yes, because under the VA's interpretation, they're still required to use the standards that they may spend in other areas. Yeah, other areas, but for his house. Is there anybody that has a house that is expenses for lodging, whatever the words of art are, that would be hurt by this provision? No, not necessarily, but only in other contexts of the expenses. Because the point was to come up with a reasonable and necessary expenses in the aggregate through use of these objective standards. Right, no, I understand that. But this just gives, it seems to me that it always is this particular thing, the actual monthly expenses for the categories, and the categories that we're concerned with here, I guess, are the mortgage and the car expenses, right? Correct. So those are always going to be, they're never going to be lower than the actual expenses. Is that right? I'm sorry, would you repeat the question? I'm not sure I can. Okay. What I'm really getting at is that this seems inequitable. It seems somebody in exactly, with exactly the same financial situation, but doesn't have these particular expenses that are governed by the national standards and local standards is being treated worse than your client. Do you remember the argument that he made about that? And what I was trying to tease out is if there is, if you can tell me that that's not so, because, and maybe it is so. If a debtor is going to be subject to using the IRS national and local standards, they need to be able to use all of the IRS national and local standards, because this test was designed not to account for a debtor's actual expenses, but standardized expenses in lieu of what they're actually spending. And isn't your answer necessarily that some of these people are going to benefit from this, and some people aren't? Just like in a standard deduction in a tax return, some people do quite well getting the benefit of the standard deduction, and other people don't. It has to break both ways. So tell me about the don'ts. Who are the people that don't? Who are the people that don't benefit from this? Yes. It's the individuals that have expenses in other categories that aren't covered by the means test. Or the ones who run their expenses up, you're saying as well. Or the ones who run their expenses up. If the court were to go with Mr. Bair's argument, it would penalize those that spend less in these particular categories for vehicles and housing. Here our clients have older, high mileage cars. They spend more on operating expenses. They spend more on operating expenses than they do in actual expenses. The point of the Supreme, coming back real quickly to the plain language of the code. The point of the Supreme Court's decision in Ransom, it was to define the adjective applicable in clause two. In the term applicable, it modifies monthly expense amounts specified under the IRS standards. A debtor can claim the deduction under the table if the deduction is appropriate and it's appropriate if they have costs that correspond with the category covered by the table. Applicable divides debtors from those who are able to use the tables from those who are not. The debtors have monthly mortgage expense. They have a monthly car expense. They're able to take these deductions. But the court in Ransom specifically did not get to the issue we have here. Correct. Ransom doesn't really shed much light on this case. Correct, but. Because they do have applicable expenses. Correct, but when the court was referring to the standards, they described the standards as the, the court's decision describes the standards as tables that the IRS prepares listing standardized expense amounts for basic necessities. And as the court says. That is in the context of saying whether you had actually an applicable standard. Correct. There's no, I think what's important when we go back to the statutes, there's no provision in 707b2a for reducing the specified amounts of the IRS standards to the debtor's actual expenses. When Congress intends to use their actual expenses, it says so. And it does so in clause two in the same sentence that it uses for applicable versus actual. And this is a distinction that must be given meaning. Also, when the court, when Congress intended to allow a debtor to deduct an amount that is different from the standards, it provides language to do that as well. It provides an additional allowance for food and clothing, up to 5% of those categories specified by the national standards. It provides an additional allowance based on actual expenses for home energy costs. In excess of the allowance specified by the local standards. The code only provides language to increase these amounts under the standards and function as a floor for what constitutes reasonable expenses for basic necessities. Congress did not intend for the national and local standards to function as merely expense caps for a debtor's actual expenses because the subsequent provisions refer to them as allowances. And the ordinary definition is a sum regularly provided for personal and household expenses. Caps implies a no greater than statutory scheme. But when Congress intends to do that, it says so. It says so under the actual expense deductions not to exceed $1,875 for private or secondary school for children under 18. Assuming that that's not already accounted for somewhere in the national and local standards. If Congress intended these to act as caps or intended the debtor to use their actual expenses whichever plus, it would have provided language to do so. The court, the Bankruptcy Court agreed with this interpretation that you have an applicable expense then you are entitled to deduction. Cases in In re Scott and in re Miranda conduct a thorough analysis and they come to the right side of this. Also the debtors are not insulated by using these standardized expenses either because they still have to pass, because while they pass the objective test based on the means test, they have a second test under the totality of the circumstances and demonstrating that this case was not an abuse under 7073. So the fact that they may use these standards to carry out this objective test, nothing is preventing the Bankruptcy Administrator's Office from looking into this debtor and determining whether their case is an abuse under Chapter 7. Whether the totality of the circumstances which is a very amendable test based on the circumstances. Well, if the decision from this court should conclude that your interpretation is correct, how would they ever be able to show abuse? Well, for purposes, even if the presumption of abuse, as this court said in the Calhoun decision. I understand what the law is, but practically speaking, how would that work? I don't understand how that could work. Well, if the debtor is passing because they have a higher secured debt payment that's above the IRS allowance, say for a $4,000 mortgage and they're passing this objective test as a result of that payment, that is abuse. Because someone with a $4,000 mortgage to pass a disposable income test clearly has the ability based on some of these standards to pay back their unsecured debtors based on the decisions that they've made. Those are circumstances similar to how this court found in Calhoun where they're not subject to this objective test. They can be subject to this subjective test based on the totality of the circumstances. The bankruptcy court, they decided this issue correctly based on the longstanding interpretation of the means test. Because the bankruptcy administrator's interpretation, it adds language to 707b2 clause two. The code does not say that debtor shall deduct the amount actually spent or local standard, whichever is less, because that language is contained in the collection of financial standards and the internal revenue manual, which is written for IRS agents. The bankruptcy administrator's interpretation requires using a source to understand the content of the standards to avoid use of the standards altogether. And as the disclaimer says, the collection of financial standards is there for federal tax administration only. And the ransom court was clear in footnote seven because it may be important for future cases to be clear on this point. We emphasize again that the statute does not incorporate or otherwise import the IRS's guidance. And in footnote eight, which declined to decide the issue before this court, FIA made a similar argument to Mr. Bair's argument and noted that that is reliant upon IRS's practice. IRS's practice in terms of using the collection of financial standards. Those allow the internal revenue agents a lot of discretion. They can avoid the standards altogether by increasing the amounts. And it's just, it's a different practice, but the point of incorporating the standards into the code was to have an objective source of information for determining what was reasonable and necessary. The guidelines are simply, the guidelines and the interpretation of the standards, there are direct odds in practice for the statutory language of the code because the code gives no opportunity specifically to adjust those standards other than to increase them, which demonstrates that Congress intended these to function as a whole. And the use of these objective standards for these operating expenses and these other expenses demonstrates that Congress intended this to be, in the aggregate, reasonable and necessary expenses for purposes of this test. Official Form 22A2 correctly implements the statutory formula contained in 11 U.S.C. 707b2. The bankruptcy court in this case acknowledged that the means test was not designed to account for specifics in particular categories. It was designed to reach an aggregate as the whole of reasonable and necessary expenses. Since current monthly income is to be reduced by the amounts determined under clauses two, three, and four, Form 22A-2, it gives effect to every word of the statute in such a way to harmonize all of its various clauses and subparts. It provides the deduction for a debtor's vehicle ownership and housing allowance under the standards, as well as the average monthly payments on account of secured debts. And by subtracting the secured debt payments deducted according to clause three of 707b2a from the corresponding allowance amounts under the IRS standards, deducted according to clause two of 707b2, the form ensures that the language of the notwithstanding clause is complied with by preventing secured debt payments, which are allowed under the separate clause, from being double-counted as part of the application of the standard. The decision that, if NREA fields, the issue with that case is that it relies too much on the notwithstanding clause to interpret the content of the standards. A debtor's monthly expenses that are actually deducted on Form 22A, that's pursuant to clause two. Those are the amounts specified under the standards and not a debtor's actual payments for debts. Therefore, the notwithstanding clause is not an issue. Second, an obligation under a housing or vehicle allowance is indisputably a debt. And as a result, if the field's decision is to be applied to use the notwithstanding clause, that would prevent lease payments as well from being deducted. It would basically have it so that lines 13A and 13D for vehicle ownership and lease costs and line A for mortgage or rent expenses, they would basically never be used for anything because the standards are what controls this and the form is entitled to, under Rule 9009 of the Federal Rules of Bankruptcy Procedure, the official form shall be construed to be consistent with the code. Congress, in implementing this test, has created a bright line test. It is both under and over-inclusive. And it's not designed, if the bankruptcy administrator's interpretation is used in this case, as the Bankruptcy Court found, this would punish debtors who are spending less in these particular categories that are at issue in this case. If there are no further questions, yours, that's all I have. I think we're fine. Thank you very much. Thank you. Thank you. I'd like to touch on a few matters that Mr. Brolin spoke on. In creating the means test, they were altering the practice that existed prior to that where courts were making individualized determination as to what was a substantial abuse. And in standardizing that, Congress did a number of things. It created an initial threshold upon which a case would, a debtor would have to prepare the means test. And debtors both would have a median income of below the median income for the state in which they live. They don't have to prepare the means test. The calculation of income was standardized through the creation of the definition of current monthly income  And as it relates to expenses, Congress delineated certain expense categories that it thought were appropriate for a debtor to be able to deduct in order to make a determination of their ability to pay. Prior to the statute, courts was the Wild West essentially. A debtor could seek to expense deduction for their country club membership, a Christmas presents, and travel hockey leagues. These are some of the cases that we saw prior to the passing of APSIFA. And what the statute did was remove that discretion from the court to determine what sort of expense category was appropriate. It provided the expense categories within the statute. What it also did was create a threshold upon which presumption of abuse would arise. In the case of the Jacksons, any amount of their 60 month disposable income was under 7,475, no presumption of abuse would arise. Between 7,475 and 12,475, if that number is 25% or greater of their non-priority unsecured debt, the presumption of abuse arises. And if the number is over 12,475, the presumption of abuse arises. So that was the standardization that Congress was seeking. If you look to the language of the statute, Congress didn't provide directions on how to apply the tables. It doesn't even specifically refer to the tables. It could have equally been referring to the Internal Revenue Services Manual, which has the same, the section of the Internal Revenue Manual is called Local Standards. It is also called National Standards, and it's also a category for other necessary expenses. As far as I'm aware and have been able to determine, other necessary expenses only exist within the Internal Revenue Manual. I would point the court to House Report 109-31, pages 13 and 14, where there's more specific reference to the Internal Revenue Services Manual, and that that was what Congress was seeking to adopt, or I shouldn't say adopt, was incorporating those certain expense categories within the means test. As it relates to the distinction between 707B3 for totality that the debtor's financial circumstances demonstrate abuse, largely those cases are reserved for anomalies with the secured debt deductions, where an individual is seeking to deduct the payment for their Lembergine. They can take that under the means test, but by and large, that is, we would argue and bring motions before the court that totality of the debtor's financial circumstances demonstrate the bad cases and abuse, not necessarily a case like the Jacksons. Again, the manner in which we are asking this court to interpret this provision is the most objective manner in which to do it. There are no windfalls provided to any debtors. Every debtor is treated equally. Those with zero expense payments get zero. Those with 100 get 100. Those with in excess of the cap are capped, and we believe that that expresses Congress's intent in limiting the deduction. That is in line with both the legislative history, with the Internal Revenue Service's interpretation of the standards as they use them, which is for a very similar purpose to determine a delinquent taxpayer's ability to pay, and also is the most equitable result. With that, Your Honors, if there's no further questions, I would just respectfully ask the court to reverse the bankruptcy court's holding. Thank you very much. Thank you very much. We will come down and greet the lawyers, and then we'll go to our last case.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker